UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

LAKEISHA WILLIAMS, CHRISTINE MORELY AND RAMEE AYESH

         **PLAINTIFFS**

     -against-

THE CITY OF NEW YORK, POLICE OFFICER RICHARD BEVERS, SHIELD #6388, POLICE DETECTIVE JOHN RIVERA, SHIELD # 452, POLICE DETECTIVE OTTOMANELLI, SHIELD # 4621, JOHN DOE #1-5,

         **DEFENDANTS**

---------------------------------------------------------------------- x

AMENDED COMPLAINT
AND JURY DEMAND

13CV5296-SLT-RML

Plaintiffs LAKEISHA WILLIAMS, CHRISTINE MORELY AND RAMEE AYESH by their attorneys, Stoll, Glickman & Bellina, LLP, for their complaint alleges as follows:

<u>PRELIMINARY STATEMENT</u>

1.   This is a civil rights action in which plaintiffs seek relief through 42 U.S.C. §1983 for the violations of their Fourth and Fourteenth Amendment rights.

2.   The claim arises from an October 18, 2012 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things, false arrest and malicious prosecution.

3.   Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

<u>JURISDICTION</u>

4.   This action arises under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5.     The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6.     The amount in controversy exceeds $75,000.00 excluding interest and costs.

<u>VENUE</u>

7.     Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

<u>NOTICE OF CLAIM</u>

8.     Within 90 days of the events giving rise to this claim, plaintiff Lakeisha Williams filed written notice of claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

<u>PARTIES</u>

9.     Plaintiff Lakeisha Williams is a United States citizen and at all times here relevant, was a resident of Richmond County in New York State.

10.     Plaintiff Ramee Ayesh is a United States citizen and at all times here relevant, was a resident of Kings County in New York State.

11.     Plaintiff Christine Morely is a United States citizen and at all times here relevant, was a resident of Lackawanna County in Pennsylvania State.

12.     The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the

appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

13.  Police Officer Richard Bevers, Shield #6388, Police Detective John Rivera, Shield # 452 and Police Detective Ottomanelli, Shield # 4621 were, at all times here relevant, police officers of the NYPD, and as such were acting in the capacity of an agent, servant and employee of the City of New York.  On information and belief, defendants Bevers, Rivera and Ottomanelli were involved in the illegal arrest of plaintiffs and/or failed to intervene in the actions of their fellow officers.  Defendants Bevers, Rivera and Ottomanelli are sued in their individual capacity.

14.  All other individual defendants ("the officers"), including John Doe #1-5, individuals whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual capacities.

15.  At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

<u>FACTUAL ALLEGATIONS</u>

16.  Prior to the incident described below, plaintiff Lakeisha Williams was involved in unrelated incident in which she received serious physical injuries.  As a result of this earlier incident Ms. Williams was legally prescribed various medications.

17.  On October 18, 2012, Ms. Williams saw her doctors, and her prescriptions were renewed.

18.  Ms. Williams went to a pharmacy in Brooklyn to have her prescriptions filled.  She was

joined by her friend, plaintiff Christine Morely, while waiting for the pharmacy to fill the prescription.

19.    Ms. Williams picked up her prescription when it was ready, and she and Ms. Morely then left the pharmacy.

20.    Ms. Williams and Ms. Morely then went to meet Plaintiff Ramee Ayesh is Ms. Morely's niece's longtime boyfriend.

21.    Ms. Williams, Ms. Morely and Mr. Ayesh then got into car, and Ms. Morely drove them to Mr. Ayesh's home.

22.    At approximately 5:00 pm, the plaintiffs pulled over near the intersection of Bay Ridge Parkway and Fort Hamilton Parkway in Brooklyn, New York.

23.    As the plaintiff's pulled over, the defendant NYPD officers approached their vehicle.

24.    The officers were wearing plain clothes and did not display any badge or other indication that they were police officers.

25.    Defendants ordered plaintiffs to exit their vehicle.

26.    Defendants then physically searched plaintiffs and their vehicle, forcibly and without consent.

27.    Defendants questioned the plaintiffs about the medications which Ms. Williams had received from the pharmacy and which were in the car. She informed the officers that they were her medications and that the prescriptions were in the car with her other property.

28.    Despite the fact that Ms. Williams had prescriptions for all of the medications in the vehicle, the defendants placed all three plaintiffs under arrest.

29.    Plaintiffs were charged with the crimes of criminal possession of a controlled substance and/or criminal sale of a controlled substance.

30.    At no time on October 18, 2012 did any of the plaintiffs sell or attempt to sell any controlled substances, nor did any of the plaintiffs possess any controlled substance except for those medications Ms. Williams had a proper prescription for.

31.    The charges were brought against plaintiffs despite defendants lacking probable cause or reasonable suspicion to believe that any crime had taken place.

32.    Plaintiff Lakeisha Williams was arraigned on or about October 20, 2012 at which time she was assigned bail and sent to Riker's Island.  On October 24, 2012 the Grand Jury dismissed all charges against Ms. Williams.  She was released at approximately 2:00 am on October 25, 2012, having spent approximately six days and nine hours in police custody.

33.    Plaintiff Ramee Ayesh was arraigned on or about October 20, 2012 at which time he was assigned bail and sent to Riker's Island.  He was released after making bail later that night or the next day.  On October 24, 2012 the Grand Jury dismissed all charges against Mr. Ayesh.

34.    Plaintiff Christine Morely was arraigned on or about October 20, 2012 at which time she was released on her own recognizance.  All charges against Ms. Morely were later dismissed.

35.    At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights.  The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.  They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

36.    During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

37.    As a direct and proximate result of the acts of defendants, plaintiffs suffered the

following injuries and damages:

    a.    Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution;

    b.    Violation of their right to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution;

    c.    Loss of liberty;

    d.    Legal fees;

    e.    Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)

38.    The above paragraphs are here incorporated by reference.

39.    Defendants have deprived plaintiffs of thei civil, constitutional and statutory rights under color of law and have conspired to deprive them of such rights and are liable to plaintiffs under 42 USC § 1983.

40.    Defendants' conduct deprived plaintiffs of their right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.  Defendants' conduct also deprived plaintiffs of their right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

41.    Defendants falsely arrested plaintiffs, maliciously prosecuted plaintiffs, and failed to intervene in each other's obviously illegal actions.

42.    Plaintiffs have been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
### (MUNICIPAL AND SUPERVISORY LIABILITY)

43.    The above paragraphs are here incorporated by reference.

44.    The City is liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.  The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

45.    The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2012, New York City paid out over $131 million for the fiscal year, compared to 2011, when it paid out more than $166 million, and 2010, when it paid $128 million.[1] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[2] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

46.    The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.  Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257,

[1] Mayor Michael Bloomberg's preliminary Management Report for FY 2013, available at http://www.nyc.gov/html/ops/downloads/pdf/pmmr2013/2013_pmmr.pdf, see page 6, last visited on June 25, 2013.

[2] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953, October 15, 2010 last visited on June 25, 2013.

(1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan  547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

47.    However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.  In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.  This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

48.     The City is liable for the damages suffered by plaintiffs in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

49.     The aforesaid event underlying plaintiffs' factual allegations was not an isolated incident.  The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.  Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

50.     The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

51.     Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD.  The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards

incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

52.     Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits.  Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.  Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

53.     The City has also been alerted to the regular use of stop and frisks by its police officers, which disproportionately target people of color, despite the lack criminal evidence that such stop and frisks actually produce, and despite the humiliation, inconvenience and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result. In 2008, of the 531,159 New Yorkers were stopped by the police, 465,413 were totally innocent (88 percent). From the total, 271,602 were black (51 percent); 167,111 were Latino (32 percent); and 57,407 were white (11 percent). In 2007, of the 468,732 New Yorkers were stopped by the police, 407,923 were totally innocent (87 percent). From the total in 2007, 242,373 were black (52 percent), 142,903 were Latino (31 percent), 52,715 were white (11 percent).[3]

54.     The City is also aware that the misconduct does not stop at the regular use of stop and

---

[3] See New York Civil Liberties Union "Stop and Frisk Report" available at http://www.nyclu.org/issues/racial-justice/stop-and-frisk-practices last visited on June 25, 2013.

frisks to violate the civil rights of innocent people. In 2008, more than half (51%) of the summonses issued by NYPD officers were dismissed for legally insufficient evidence. Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in the violation of innocent New Yorker's civil rights.[4]

55.     The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB.  In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB.  The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

56.     The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct.  In 2002, the percentage of officers who were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[5] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized.   Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate

---

[4] See WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited on June 25, 2013.
[5] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006", available at: http://www.nyclu.org/files/ccrb_failing_report_090507.pdf, last visited on June 25, 2013.

proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions. This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

57. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

58. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now

charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

59.     The City is aware that all of the aforementioned has resulted in violations of citizens'
constitutional rights.  Despite such notice, the City has failed to take corrective action.  This
failure and these policies caused the officers in the present case to violate plaintiffs' civil rights,
without fear of reprisal.

60.     Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant
City.

**THIRD CAUSE OF ACTION**
(FALSE ARREST AND ILLEGAL IMPRISONMENT)

61.     The above paragraphs are here incorporated by reference.

62.     Defendants subjected plaintiff Williams to false arrest, false imprisonment, and
deprivation of liberty without probable cause.

63.     Defendants intended to confine plaintiff Williams.

64.     Plaintiff Williams was conscious of the confinement and did not consent to it.

65.     The confinement of plaintiff Williams was not privileged.

66.     As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was
damaged.

**FOURTH CAUSE OF ACTION**
(CONSTITUTIONAL TORT)

67.     The above paragraphs are here incorporated by reference.

68.     Defendants, acting under color of law, violated Plaintiff Williams' rights pursuant to §§
5, 6 and 12 of the New York State Constitution.

69.     A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the
New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under

those sections.

## FIFTH CAUSE OF ACTION
(NEGLIGENT HIRING & RETENTION)

70.     The above paragraphs are here incorporated by reference.

71.     Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

72.     Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

73.     Upon information and belief, defendant officers were incompetent and unfit for their positions.

74.     Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous and had previously falsely arrested civilians without probable cause.

75.     Upon information and belief, defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

76.     Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

## SIXTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR)

77.     The above paragraphs are here incorporated by reference.

78.     Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New

York's interest.

79.    As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, Plaintiff was damaged.

WHEREFORE, plaintiffs demand  judgment against the defendants, jointly and severally, as follows:

A.     In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action;

B.     Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C.     Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D.     Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:        March 1, 2014
              Brooklyn, New York

TO:    City of New York
       Corporation Counsel Office
       100 Church Street
       New York, NY  10007
       Attn: Jennifer Schuman

       Officer Richard Bevers, Shield #6388,
       c/o Jennifer Schuman
       Corporation Counsel Office
       100 Church Street
       New York, NY  10007

       Detective John Rivera, Shield # 452
       NYPD – Narcotics Brooklyn South
       1 Police Plaza
       New York, NY 10007

Respectfully yours,

By: Nicholas Mindicino, Esq.
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, 3rd Floor
Brooklyn, NY  11217
(718) 852-3710
(718) 852-3586
NMindicino@stollglickman.com

Detective Ottomanelli, Shield # 4621
NYPD – Narcotics Brooklyn South
1 Police Plaza
New York, NY 10007